

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

### NO. 02-18-00128-CV

IN THE INTEREST OF G.M.,
A CHILD

----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 323-104707-17

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

This is an ultra-accelerated appeal[2] in which S.G. (Mother) appeals the

termination of her parental rights to her son, Garrett,[3] following a bench trial. In a

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. R. Jud. Admin. 6.2(a) (requiring appellate court to dispose of appeal from a judgment terminating parental rights, so far as reasonably possible, within 180 days after notice of appeal is filed).

[3]*See* Tex. R. App. P. 9.8(b)(2) (requiring court to use aliases to refer to minors in an appeal from a judgment terminating parental rights). All children are referred to using aliases.

single issue, Mother argues that the evidence is factually insufficient to support the trial court's best-interest finding. *See* Tex. Fam. Code Ann. § 161.001(b)(2) (West Supp. 2017). We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Mother's drug addiction over the years culminated in the removal of her two children. Although Mother took steps to improve her life during the final three months that this case was pending in the trial court—including obtaining safe housing with her mother, obtaining employment, and ending her relationship with Father—her recent positive changes did not overcome the fact that she had continued to use drugs throughout the pendency of the case. Because Mother challenges the sufficiency of the evidence to support the trial court's best-interest finding, we set forth a summary of the evidence.

## A. Removal of Older Son Kurt

In August 2015, the Department of Family and Protective Services (the Department) received an allegation of neglectful supervision by Mother of six-year-old Kurt. The report indicated that Mother suffered from a heroin addiction and that she had used heroin around Kurt. Mother once passed out on the porch of her apartment for more than an hour. While Mother was unconscious, Kurt was left unsupervised in the apartment. The report further indicated that Mother often allowed Kurt to stay up unsupervised for more than twenty-four hours at a time. The report noted that Kurt was unable to speak properly and did not attend school.

2

Mother tested positive for opiates. She admitted to leaving drugs and drug paraphernalia within Kurt's reach and agreed that Kurt was unsupervised whenever she passed out from her heroin use. The Department removed Kurt from Mother's care and placed him in foster care, pending the completion of a home study on maternal Great-Grandparents' home. Great-Grandparents were appointed managing conservators of Kurt in a suit affecting the parent-child relationship in May 2016.

## B. Removal of Garrett

Mother gave birth to Garrett in February 2017. Although Garrett's meconium tested positive for amphetamine, both Garrett and Mother tested negative. The following month, in March 2017, Mother tested positive for methamphetamine. The Department placed Garrett with Great-Grandmother and allowed supervised contact between Mother and Garrett as part of a parent-child safety plan.

Four days later, the Department received a referral alleging neglectful supervision and physical abuse of Garrett by Mother. Mother's sister had found methamphetamine in Mother's belongings, and Great-Grandmother had told Mother that she must leave Great-Grandmother's home immediately. A physical altercation ensued; Mother pushed her sister, bit her mother, and attempted to "rip" Garrett out of Great-Grandmother's arms. Great-Grandmother secured Garrett and Kurt in a bedroom and called the police. The police arrested Mother on outstanding warrants. Mother was charged with assault causing bodily injury

3

to a family member.  The Department subsequently filed suit for temporary managing conservatorship of Garrett.

## C.  Domestic Violence Concerns

Mother's criminal history includes two counts of assault bodily injury to a family member in June 2016—for which Mother was placed on community supervision for twenty-four months.  Mother admitted to conservatorship worker Amber Jefferson that she had fought with Father and that they had hit each other.[4]

## D.  Mother's Service Plan and Compliance

Jefferson developed a service plan for Mother.  It required Mother to complete a drug and alcohol assessment and to follow any recommendations from the assessment, including attending treatment; to refrain from criminal activity; to submit to random drug testing; to attend individual counseling; to attend the parenting class FOCUS for Mothers; to attend domestic violence classes; to obtain and maintain safe and stable housing; to obtain and maintain stable and legal employment; and to address her anger management issues with a professional and follow all recommendations.  Jefferson testified that Mother completed the drug and alcohol assessment and inpatient drug treatment and submitted to drug testing.  After Mother had completed her inpatient drug

---

[4]At the time of the termination trial, Father was in jail on three pending charges related to assaults on Mother in October and November 2017, and he had prior CPS history for domestic violence involving Mother.  Because Father is not involved in this appeal, we omit further details related to the termination of his parental rights to Garrett.

4

treatment, her follow-up care required her to attend Narcotics Anonymous meetings and Alcoholics Anonymous meetings. But Mother refused to attend them. Mother also refused to participate in domestic violence classes.[5]

Mother moved from the DFW area to Austin in November or December 2017 after a fight with Father; he had punched Mother in the face. Jefferson arranged a CPS courtesy worker for Mother so that she could continue to work her service plan in Austin. Nonetheless, Mother did not complete the required services.

While this case was pending, Mother had the opportunity to visit Garrett one hour each week. But she attended only approximately two visits per month. Mother's visits evoked concern by the Department that Mother and Garrett were not bonded. Garrett appeared uncomfortable around Mother; she appeared unfamiliar to him. Mother last visited Garrett on December 27, 2017.

Two weeks prior to trial, Jefferson contacted the Austin courtesy worker. The courtesy worker forwarded a text message conversation between himself and Mother. When the courtesy worker had texted Mother that she needed to start a parenting class, Mother had responded, "[W]ell, they're terminating my rights so what is the point?"

---

[5]The record reflects that Mother and Father had continued to engage in domestic violence while the case was pending as reflected by scratches on their arms and blood on their clothing when they showed up to visits. Additionally, Mother was arrested for assaulting Father in late September 2017, but the charges were dropped.

Jefferson testified that at the time of the termination trial, Mother and Father were no longer in a relationship, but Jefferson did not know when that relationship had ended. Mother was living with her mother in Austin; the courtesy worker had no concerns about the home. Mother was employed at Applebee's in Austin.

### E. Garrett's Status and Planned Adoption

The permanency reports and the child's service plan review submitted to the trial court describes Garrett as "a happy and healthy baby" who "enjoys being cuddled" and appears to be bonded with Great-Grandmother.

Jefferson testified that Garrett's prognosis after birth was precarious; doctors anticipated that Garrett would have disabilities and would not be able to progress developmentally at a normal rate due to his in vitro exposure to illegal drugs. The child's service plan review noted that Garrett's motor skills were not developing on track and that his right arm lacked muscle strength. A neurologist opined that Garrett might have mild cerebral palsy but that a diagnosis could not be made until he was older. Despite those setbacks, Jefferson testified that Garrett had far exceeded the doctors' expectations and was thriving in Great-Grandparents' home. Great-Grandparents had coordinated with Early Childhood Intervention to provide Garrett with occupational and physical therapy designed to develop his motor skills.

Jefferson said that Great-Grandparents met Garrett's physical, emotional, developmental, educational, and financial needs and provided him with a safe

and loving home. Jefferson opined that Great-Grandparents would be able to meet Garrett's needs in the future. Thus, the Department's plan was for Great-Grandparents to adopt Garrett.

### F. The Department's Concerns and Recommendations from the Department and Garrett's Ad Litem

Jefferson expressed concerns about Mother's continued drug use throughout the pendency of the case. Mother admitted using drugs in October 2017, and she tested positive for cocaine and methamphetamine in February 2018.[6] Jefferson also expressed concern about Mother's neglect of Garrett, her inability to provide Garrett with a stable home, and her failure to address the Department's concerns about her pattern of domestic violence.

The Department requested termination of Mother's parental rights to Garrett based on multiple grounds under family code section 161.001(b)(1), including endangering environment and endangering conduct. Jefferson testified that it was in Garrett's best interest for Mother's parental rights to be terminated. Garrett's attorney ad litem also opined that it was in Garrett's best interest for the trial court to terminate Mother's parental rights.

---

[6]Mother argues in her brief that the year was not provided through testimony. Because Jefferson testified that Mother had "recently tested positive for cocaine and methamphetamines in February," because the case was not opened until March 2017, and because the termination trial occurred on March 16, 2018, a rational factfinder could conclude that the recent test occurred in February 2018.

7

## G. Outcome

After hearing the above testimony and reviewing the evidence admitted at trial, the trial court found by clear and convincing evidence that Mother had violated subsections (D), (E), (N), (O), and (R) of section 161.001(b)(1) and that termination of her parental rights was in Garrett's best interest. Mother perfected this appeal from the trial court's termination order.

## III. FACTUALLY SUFFICIENT EVIDENCE SUPPORTS THE BEST-INTEREST FINDING

In her sole issue, Mother argues that the evidence is factually insufficient to support the trial court's best-interest finding.

## A. Burden of Proof and Standard of Review

In a termination case, the State seeks not just to limit parental rights but to erase them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b) (West Supp. 2017); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, "[w]hen the State seeks to sever permanently the relationship between a parent and a child, it must first observe fundamentally fair procedures." *In re E.R.*, 385 S.W.3d 552, 554 (Tex. 2012) (citing *Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S. Ct. 1388, 1391–92 (1982)). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *E.R.*, 385 S.W.3d at 554–55; *Holick*, 685 S.W.2d at 20–21.

8

Termination decisions must be supported by clear and convincing evidence. *See* Tex. Fam. Code Ann. §§ 161.001(b), 161.206(a); *E.N.C.*, 384 S.W.3d at 802. Due process demands this heightened standard because "[a] parental rights termination proceeding encumbers a value 'far more precious than any property right.'" *E.R.*, 385 S.W.3d at 555 (quoting *Santosky*, 455 U.S. at 758–59, 102 S. Ct. at 1397); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see also E.N.C.*, 384 S.W.3d at 802. Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *E.N.C.*, 384 S.W.3d at 802.

For a trial court to terminate a parent-child relationship, the Department must establish by clear and convincing evidence that the parent's actions satisfy one ground listed in family code section 161.001(b)(1) and that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(b); *E.N.C.*, 384 S.W.3d at 803; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re C.D.E.*, 391 S.W.3d 287, 295 (Tex. App.—Fort Worth 2012, no pet.).

We are required to perform "an exacting review of the entire record" in determining whether the evidence is factually sufficient to support the termination of a parent-child relationship. *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014). In

9

reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and do not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated one of the provisions of section 161.001(b)(1) and that termination of the parent-child relationship would be in the best interest of the child. *See* Tex. Fam. Code Ann. § 161.001(b)(1), (2); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

## B. Best-Interest Factors

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). We review the entire record to determine the child's best interest. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). The same evidence may be probative of both the subsection (1) ground and best interest. *Id.* at 249; *C.H.*, 89 S.W.3d at 28. Nonexclusive factors that the trier of fact in a termination case may also use in determining the best interest of the child include the following: the desires of the child; the emotional and physical needs of the child now and in the future; the emotional and physical danger to the child now and in the future; the parental

abilities of the individuals seeking custody; the programs available to assist these individuals to promote the best interest of the child; the plans for the child by these individuals or by the agency seeking custody; the stability of the home or proposed placement; the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best-interest finding, "we consider, among other evidence, the *Holley* factors"); *E.N.C.*, 384 S.W.3d at 807. These factors are not exhaustive, and some listed factors may be inapplicable to some cases. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. *Id.* On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.*

### C. *Holley* Factors Weigh in Favor of Termination

With regard to the desires of the child, Garrett was thirteen months old at the time of the termination trial and therefore did not testify. The record, however, demonstrates that Garrett was bonded to Great-Grandmother; that he was well-cared for by Great-Grandparents; and that he was unfamiliar with Mother, who attended only about half of the visits she was allowed each month and had not visited Garrett during the three months prior to trial. The trial court was entitled to find that this factor weighed in favor of terminating Mother's

11

parental rights to Garrett. *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (stating that when a child is too young to express his desires, the factfinder may consider whether the child has bonded with his current caregiver, is well-cared for, and whether the child has spent minimal time with the parent).

As for the emotional and physical needs of Garrett now and in the future, his basic needs include food, shelter, and clothing; routine medical and dental care; a safe, stimulating, and nurturing home environment; and friendships and recreational activities appropriate to his age. Although Mother obtained safe and appropriate housing by moving to Austin during the last three months that the case was pending, she did not demonstrate her ability to consistently provide a safe home for Garrett or to consistently provide for his emotional needs; she stopped visiting Garrett. The trial court was entitled to find that this factor weighed in favor of terminating Mother's parental rights to Garrett.

With regard to the emotional and physical danger to Garrett now and in the future, the record reflects that Mother's history of drug use poses a significant risk of harm to Garrett. Mother used drugs during her pregnancy with Garrett and demonstrated an inability to supervise Garrett while under the influence of drugs. Mother's history of domestic violence with Father poses another risk of emotional and physical danger to Garrett. The trial court was entitled to find that this factor weighed in favor of terminating Mother's parental rights to Garrett.

With regard to Mother's parenting abilities, the record demonstrates Mother's history of prioritizing her drug use over parenting her children and that she struggles to manager her anger. The trial court was entitled to find that this factor weighed in favor of terminating Mother's parental rights to Garrett.

The record shows that Mother did not complete her CPS services.[7] The trial court was entitled to find that this factor weighed in favor of terminating Mother's parental rights to Garrett.

With regard to plans for Garrett and the stability of the proposed placement, the record reflects that Mother wanted Garrett to be returned to her care and wanted to provide him with a drug-free, safe, and stable home free from physical abuse and neglect. But Mother had failed to remain drug-free and had only obtained safe housing immediately before trial. Great-Grandparents, who were already caring for Mother's older son, had shown the ability to provide a safe, stable home for Garrett and planned to adopt him. The trial court was

---

[7]Mother argues that we should not look at whether she completed her services but rather should focus on whether she completed the majority of her service plan goals. Even focusing on Mother's service plan goals, which is not the standard we apply, the first two service plan goals (of a total of four goals) required Mother to demonstrate an ability to protect Garrett from any physical, emotional, and mental abuse and neglect and to demonstrate an ability to provide Garrett with a safe and drug-free environment. Because Mother had failed to refrain from drug use during the case, Mother had not completed these goals.

entitled to find that this factor weighed in favor of terminating Mother's parental rights to Garrett.[8]

With regard to Mother's acts or omissions that may indicate that the existing parent-child relationship is not a proper one, the analysis set forth above—which details Mother's struggle with drug use that continued even through the month before the termination trial, Mother's housing instability, Mother's willingness to expose Garrett to domestic violence, as well as Mother's failure to take advantage of the services that she was offered—reveals that the existing parent-child relationship between Mother and Garrett is not a proper parent-child relationship. The trial court was entitled to find that this factor weighed in favor of terminating Mother's parental rights to Garrett.

As for any excuse for Mother's acts or omissions, Mother acknowledged her drug use to Jefferson at different points while the case was pending and acknowledged that she had endangered Garrett by using drugs during her pregnancy. The trial court was entitled to find that this factor weighed in favor of terminating Mother's parental rights to Garrett.

---

[8]To the extent that Mother argues that "[t]here was no legal justification" for terminating Mother's parental rights to Garrett because Mother's parental rights to Kurt were not terminated before appointing Great-Grandparents as his managing conservators, the trial court must consider the best interest of each child individually. *See In re J.O.A.*, 283 S.W.3d 336, 340 (Tex. 2009) (affirming order that terminated mother's parental rights to her two youngest children and appointed mother's mother as managing conservator of mother's oldest child without terminating her parental rights to oldest child). *See generally* Tex. Fam. Code Ann. § 161.001(b)(2).

Reviewing all the evidence with appropriate deference to the factfinder, we hold that the trial court could have reasonably formed a firm conviction or belief that termination of the parent-child relationship between Mother and Garrett was in his best interest, and we therefore hold that the evidence is factually sufficient to support the trial court's best-interest finding. *See* Tex. Fam. Code Ann. § 161.001(b)(2); *Jordan v. Dossey*, 325 S.W.3d 700, 733 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (holding evidence factually sufficient to support the trial court's best-interest finding when most of the best-interest factors weighed in favor of termination); *In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) ("A parent's drug use, inability to provide a stable home, and failure to comply with [a] family service plan support a finding that termination is in the best interest of the child."). We overrule Mother's sole issue.

## IV. CONCLUSION

Having overruled Mother's sole issue, we affirm the trial court's judgment terminating her parental rights to Garrett.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: WALKER, PITTMAN, and BIRDWELL, JJ.

DELIVERED: July 19, 2018

15